UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOHN DOE, A MINOR, BY AND THROUGH HIS PARENT AND NEXT FRIEND, K.F.<br>    Plaintiff<br><br>v.<br><br>FRAMINGHAM PUBLIC SCHOOLS<br>    Defendant | C.A.. No. |

## COMPLAINT

### PRELIMINARY STATEMENT

1. This action is brought by the Plaintiff, John Doe, by and through his parent and next friend, K.F.,[1] seeking an award of reasonable attorney's fees from the Defendant, Framingham Public Schools, pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.,* following a decision of the Bureau of Special Education Appeals ("BSEA") in which the Plaintiff was the prevailing party.

### JURISDICTION

2. This court has jurisdiction of this matter pursuant to 20 U.S.C. § 1415(i)(3)(A) and venue under 28 U.S.C. § 1331.

### PARTIES

3. The Plaintiff, John Doe, is a 11-year-old boy who resides with his parent, K.F., in Framingham Massachusetts.

4. The Defendant, Framingham Public Schools (hereinafter referred to as the "District" or "Framingham"), is a school district duly organized, established and existing under

---

[1] The names of the minor plaintiff and his parent have been redacted pursuant to Local Rule 5.3.

the laws of the Commonwealth of Massachusetts and is a public corporation with the capacity to be sued. It receives federal funds from the United States Department of Education pursuant to the IDEA, 20 U.S.C. § 1400 *et seq.*, and is required to provide a free and appropriate public education to all school age children with disabilities residing in the District pursuant to the requirements of the IDEA and the Massachusetts Special Education law, G.L. c. 71B.

## FACTS

5. As a resident of Framingham and as child with a disability within the meaning of the IDEA, John Doe is entitled to a free and appropriate public education ("FAPE") to be provided by Framingham.

6. John Doe is a student with a disability who is entitled to special education services under state and federal law. John Doe's diagnoses include Double Deficit Dyslexia, as well as Specific Learning Disabilities in Reading, Math and Written Language; a Language Disorder; and ADHD.

7. As a result of his disabilities, John Doe's academic performance falls significantly below expectations for his age, grade and intellectual abilities.

8. Pursuant to Individualized Education Programs ("IEPs") beginning when he was first found eligible for special education services in third grade, John Doe's special education team consistently proposed placement in a "full inclusion program"[2], with Grid C "pull-outs"[3] in Reading, Math and Written Expression, along with reading remediation using a research-based reading program.

---

[2] Under special education regulations, a "full inclusion" program means that IEP services are provided outside the general education classroom less than 21 percent of the time.
[3] A "Grid C pull-out" refers to the manner in which special education services are delivered to a student. In the IEP, under Grid C, services are delivered to the student in settings outside of the general education classroom.

9. However, at subsequent team meetings in February and March 2023, John Doe's IEP Team proposed to terminate his Grid C "pull-out" services with the intention to deliver all instruction in Reading, Math and Written Expression in the general education classroom. The Team also proposed to terminate John Doe's entitlement to reading remediation using a research-based Reading program.

10. The TEAM's proposals were contrary to the recommendations set forth in a neuropsychological evaluation in September 2022 which found that John Doe had demonstrated minimal progress over two years, even with "pull-out" services and research-based reading, and that he was performing academically three or more years below grade level. It was also inconsistent with prior Team decisions which recognized that pull-out instruction and a research-based reading remediation were necessary.

11. John Doe's parent rejected the termination of the "pull-out" services.

12. The Parent retained the law firm of Sankey Law Offices, P.C., (the "Attorneys"), to represent them in regard to their dispute with the District regarding John Doe's educational services.

13. On June 1, 2023, on behalf of John Doe, the Attorneys filed a Hearing Request with the Bureau of Special Education Appeals ("BSEA") pursuant to 20 U.S.C. §1415, challenging the IEP's proposed by the District for John Doe, and seeking an Order placing John Doe at Learning Prep School for the 2023-24 school year.

14. The provisions of the IDEA, 20 U.S.C. § 1415(f)(1)(A), impose an obligation on states to conduct impartial due process hearings to hear complaints with respect to any matter relating to the identification, evaluation or educational placement of a child, or the provision of a free appropriate public education to a child. In Massachusetts, these hearings are conducted by

the BSEA in accordance with rules that have been promulgated pursuant to Massachusetts law. Mass.Gen.Laws ch. 71B, § 3; 603 Mass.Code.Regs. 28.08(5)(a).

15. In the hearing request, the Parent asserted that the in-District program proposed by Framingham failed to provide John Doe with an FAPE and requested "an order of placement at Learning Prep School for the 2023-24 school year, with tuition, transportation, and other related costs."

16. In opposition to the hearing request, Framingham filed a response denying John Doe's request for placement at Learning Prep School and asserting that Framingham's proposed in-District program was appropriate.

17. On June 16, 2023, after the hearing request was filed, John Doe's IEP Team met again and continued to propose a full inclusion program without Grid C pull-outs in Reading, Math and Written Language, and without proposing a research-based reading remediation program.

18. On August 8, 2023, John Doe's mother provided notice to the District of her intention to enroll John Doe at Learning Prep School for the 2023-24 school year, and to seek reimbursement from the District, based upon the District's failure to provide him with appropriate educational programming, including the elimination of Grid C services in Reading, Math and Written Language.

19. John Doe began attending classes at Learning Prep School in September 2023 at parental expense.

20. Learning Prep School is a state-approved private special education day school that serves students from grades 4 to 12 who present with primary diagnoses of language-based learning disabilities and language disorders.

4

21.     On October 11, 2023, after John Doe was attending Learning Prep School, his IEP Team met again to consider his program. As a result of this meeting, the Team proposed placement in a full inclusion program and proposed to restore "pull out" services in Reading, using a research-based reading program.

22.     This IEP restored important services that John Doe was denied at the time that the hearing request was filed and which were not offered at the time that John Doe's parent decided to place him at Learning Prep School.

23.     John Doe remained in attendance at Learning Prep School, as funded by his parent.

24.     A hearing on John Doe's claims was held over four days on November 7, 13, and 23, 2023 and on December 18, 2023 before BSEA Hearing Officer Marguerite Mitchell.

25.     Framingham did not limit its liability to pay attorney's fees by making a written offer of settlement at any time more than 10 days prior to the hearing pursuant to 20 U.S.C. § 1415(i)(3)(D)(i).

26.     On April 5, 2023, Hearing Officer Mitchell issued a Decision which found that:

Upon consideration of the documentary and testimonial evidence, the applicable law, and the Parties' arguments, I conclude that Parent met her burden to prove the proposed IEPs between February 2023 and June 2023 were not reasonably calculated to provide Student with a meaningful educational benefit in the least restrictive environment in light of his circumstances. I further conclude that Parent met her burden to prove that Student's placement at Learning Prep was proper. Thus, applying the "equitable considerations relevant in fashioning relief, Parent shall be reimbursed for Student's placement at Learning Prep through the date of this Decision.

27.     The Hearing Officer further explained:

The need for Student to receive substantially separate services in the areas of decoding and encoding, mathematical operations, mathematical fluency, and spelling, in addition to accommodations and modifications in the inclusion classroom is further supported by the District's 3-year reevaluation tests

conducted in the fall of 2023. Thus, had the District proposed IEPs that contained this type of programming, the inquiry would now be over. However, the IEPs proposed by the King Teams, between February and June 2023, progressively eliminated Student's academic substantially separate programming, instead providing for services to solely be delivered in the general education classroom; and, as of the March 2023 IEP through the June 2023 IEP, also eliminated Student's Wilson reading services entirely.

28.     Further, the Hearing Officer wrote:

The District contends that the King Teams' decisions to reduce Student's C-Grid academic services, and "shift" them to inclusion services in the classroom (i.e., remove C-Grid services and add B-Grid services) was proper as it was based on classroom observations, progress reports, benchmark testing scores, Wilson diagnostic data, and teacher input. While all these elements are important considerations for an IEP Team to utilize in determining the necessary special education services a student requires, the record does not support that they were sufficient, in this case, to justify the King Teams' proposals. Although I credit and commend the educational work the King staff did with Student, I do not find the King Teams' proposed IEPs to have been reasonably calculated to provide Student with a FAPE. The District's own 3-year reevaluation information and the recommendations of the Fuller Team two months later to reinstate Wilson services for decoding support, as well as to propose Guided Academics in the C-Grid to address Student's Math, Reading and Written Language goals, further contravenes the King Teams' IEPs.

29.     Finally, the Hearing Officer concluded:

I therefore conclude that the IEPs proffered by the District, (specifically the February 2023 IEP, the March 2023 IEP, the April 2023 IEP and the June 2023 IEP) as they progressively eliminated Student's C-Grid academic services, replacing them with B-Grid inclusion services only, and entirely eliminated Student's Wilson services were not appropriate for Student [and] [a]t the time Parent made her decision to unilaterally place Student at Learning Prep, the District had not proposed an appropriate IEP.

29.     Next, recognizing the Team's decision on October 11, 2023 to restore Student's Grid C Reading services and to provide a research-based Reading program, the Hearing Officer found that "the District cured the deficiencies in its IEP and proposed an IEP that was reasonably calculated to provide Student with a FAPE."

6

30. As a result, because the Team had restored services that had prompted the Parent's decision to place Student at Learning Prep School, the Hearing Officer found that Parent was entitled to reimbursement only through April 5, 2024, the date of the Decision, and that Student should return to the "cured" in-District program, after a transition plan was put in place, where he would benefit from the services provided in the "cured IEP."

31. Student returned to school in the District on May 1, 2024 after the Team met and made plans to facilitate his return.

32. Plaintiff's counsel has presented to Defendant, through counsel, an invoice for reasonable legal fees incurred to date in this matter in the amount of $64,187.00.

33. Despite demand, Framingham has refused to reimburse the Plaintiff the full amount of attorney's fees incurred for legal representation during the proceeding.

## CAUSE OF ACTION

34. As a direct result of litigation for which attorney's fees have accrued, Plaintiff has obtained the relief which she requested through the BSEA process: a determination that the IEPs proposed by Framingham denied John Doe of his right to a free appropriate public education; an order of placement at Learning Prep School; and an order of reimbursement for the costs of Learning Prep School for a substantial portion of the school year. Moreover, Framingham's decision "to cure" the program proposed for John Doe was a direct result of the Parent's decision to unilaterally place John Doe at Learning Prep School.

35. The BSEA Decision and Order materially changed the legal relationship between the parties and provided Plaintiff with actual relief on significant and material claims, allowing him to derive benefits which Framingham had previously denied and which Plaintiff would not have obtained but for his litigation of the issues before the BSEA.

36. The relief obtained by Plaintiff was not merely technical or "de minimus" in nature.

37. Based upon the foregoing, Plaintiff is a prevailing party in an action brought under the IDEA, 20 U.S.C. § 1415(i)(3)(B), and is entitled to an award of reasonable attorney's fees and costs against Defendant.

WHEREFORE, the Plaintiff prays for the following relief:

a) that this Court determine that the Plaintiff is the prevailing party pursuant to 20 U.S.C. § 1415(i)(3)(B);

b) that this Court award reasonable attorney's fees and costs pursuant to 20 U.S.C. § 1415(i)(3)(B); and

c) that this Court award interest and such other relief as it deems appropriate.

Respectfully submitted,
The Plaintiff,
By his Attorneys,

Jeffrey M. Sankey, BBO #551062
Sankey Law Offices, P.C.
300 North Main Street, Suite 104
Mansfield, MA 02048
(508) 339-9421
jsankey@sankeylaw.com